# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SAMUEL BIERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12CV375 |
| | ) | |
| TRACY CLINE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendants State of North Carolina and Tracy Cline's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Doc. # 10]. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's claims against the State of North Carolina for First Amendment retaliation and Fourteenth Amendment stigmatization. Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's claims against Ms. Cline in her official capacity under Section 1983 for First Amendment retaliation and as to the claims in both her official and individual capacity for stigmatization under the Due Process clause of the Fourteenth Amendment. All other claims in this matter seeking money damages against the State of North Carolina and against Ms. Cline in her official capacity are **DISMISSED** for lack of subject matter jurisdiction. Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's claim against Ms. Cline in her individual capacity for First Amendment retaliation.

I.

On April 13, 2012, Plaintiff Samuel Biers, a former magistrate judge sitting in

Durham County, North Carolina, filed a complaint against multiple defendants, including former Durham District Attorney Tracy Cline and the State of North Carolina, alleging several state and federal claims, including claims for First Amendment retaliation and Fourteenth Amendment stigmatization under 42 U.S.C. § 1983.  See Doc. # 1 (Plaintiff's Complaint).  On July 16, 2012, Defendants Cline and the State of North Carolina filed a motion to dismiss the federal claims against Ms. Cline and the State of North Carolina.  Doc. # 10.  On August 10, 2012, Plaintiff filed a response in opposition to Defendants' motion to dismiss.  Doc. # 12.

The following factual allegations are taken as true for the purposes of the motion to dismiss.  Plaintiff Biers served as a magistrate judge sitting in Durham County, North Carolina.  Doc. # 1 ¶ 12.  In the first two months of his employment, Mr. Biers witnessed numerous instances of improper and unlawful conduct committed by other magistrates in the course of their duties.  Id. ¶ 13.  On March 9, 2011, Mr. Biers submitted a verified complaint setting forth facts alleging misconduct in office committed by Magistrates Shelby Evans and Apryle Lawson, and seeking their removal from office.  Id. ¶ 14.

Mr. Biers's complaint alleged the following: that Magistrate Evans unlawfully carried a handgun without a permit while on duty; that she repeatedly left the handgun on top of a desk in an area where inmates might gain access to it; that she conspired with former District Attorney Tracey Cline and others to exercise influence over witnesses and the disposition of criminal cases; that she conspired with former District Attorney Cline to unlawfully recall and alter properly issued criminal process; and that she engaged in ex parte communications with witnesses after criminal proceedings had been initiated.  Id. ¶ 15.  The complaint also alleged that Magistrate Lawson improperly

2

took extended leaves of absence while collecting her regular salary. Id. ¶ 16. On March 11, 2011, Magistrate Evans was presented with Mr. Biers's complaint. Id. ¶ 17.

On or about March 11, 2011, Mr. Biers reviewed an audit report indicating that another magistrate was unlawfully converting funds held in trust in the magistrate's office. Id. ¶ 18. As a result of the audit, that magistrate was suspended with pay for three days. Id. Ms. Cline advised Senior Resident Superior Court Judge Orlando Hudson that she had investigated the matter and determined not to initiate criminal proceedings in connection with the findings. Id. ¶ 19. Mr. Biers objected to the magistrate's suspension with pay as improper and unwarranted by North Carolina law and argued that the magistrate should have been suspended without pay. Id. ¶ 20. Mr. Biers also questioned the designation of Magistrate Evans as the "Chief Magistrate" on the grounds that no statutory or constitutional authority existed for designating any person the "Chief Magistrate" of a judicial district. Id. ¶ 21. Mr. Biers inquired about the procedure for initiating criminal proceedings to charge a magistrate with crimes committed while in office and in his presence. Id. ¶ 22. On April 1, 2011, Magistrate Evans resigned her position as "Chief Magistrate." Id. ¶ 23. On the same day, the 14th Judicial District adopted a new policy barring the initiation of criminal proceedings against a magistrate unless supported by an affidavit sworn to by a law enforcement officer establishing probable cause. Id. ¶ 24.

In response to the complaints submitted by Mr. Biers, the Defendants Cline, Evans, Martin, and others, allegedly undertook a course of conduct designed to publicly stigmatize Mr. Biers and to subject him to public humiliation within Durham County and the State of North Carolina. Id. ¶ 25. The Defendants allegedly conspired both to

3

publicly stigmatize Mr. Biers by publishing false statements to the media and also to initiate proceedings to remove him from office supported by false affidavits. Id. ¶ 26-27.

On or about April 12, 2011, District Attorney Cline obtained the contents of the State's personnel file for Mr. Biers. Id. ¶ 28(d). Between March 15, 2011 and May 5, 2011, Sheriff Martin initiated efforts to obtain sealed and expunged records relating to criminal proceedings against Mr. Biers in Michigan and Nevada. Id. ¶ 28(e). Magistrate Evans, District Attorney Cline, and Sheriff Martin provided Ms. Kenya Newell with information from Mr. Biers's confidential state personnel file and also provided her with "false claims that Plaintiff had a criminal record." Id. ¶ 29. Defendants provided Ms. Newell with this false information in order to support an affidavit to initiate removal proceedings. Id. Defendants also made false statements to a local reporter who published an article asserting that Plaintiff had falsified his identity in his employment papers in order to prevent detection of a criminal record relating to Plaintiff in Michigan. Id. ¶ 32. Mr. Biers alleged in his complaint that he had no criminal record at the time the statements were made by the Defendants. Id. ¶ 28(k).

The false allegations about Mr. Biers were republished by other news organizations and broadcast to populations within Durham County and throughout North Carolina. Id. ¶ 34. In response to the public outrage and the damage to his reputation, Mr. Biers resigned his position as a magistrate judge. Id. ¶ 35. On May 25, 2011, the attorney appointed by the superior court to prosecute the removal action against Mr. Biers advised the presiding superior court judge that he could find no evidence of misconduct by Mr. Biers. Id. ¶ 36. The presiding judge dismissed the proceedings seeking Mr. Biers's removal from office. Id. ¶ 38.

II.

Defendants move to dismiss Mr. Biers's Section 1983 claims for money damages against the State of North Carolina and Ms. Cline in her official capacity pursuant to Fed. R. Civ. P. 12(b)(1) for lack of federal jurisdiction under the doctrine of Eleventh Amendment sovereign immunity.

It is well established that a state's sovereign immunity precludes private suits for money damages unless that immunity is somehow waived or negated. Bell Atlantic MD, Inc. v. MCI Worldcom, Inc., 240 F.3d 279, 288 (4th Cir. 2001). "The Eleventh Amendment generally deprives the federal courts of jurisdiction to hear actions for money damages brought against a State by its own citizens or by citizens of another state." In re Sec'y of Dep't of Crime Control & Pub. Safety, 7 F.3d 1140, 1145 (4th Cir. 1993) (citing Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990); Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)). A state's Eleventh Amendment immunity will not be negated "absent (1) a valid abrogation of that immunity by Congress, (2) a State's clear and unequivocal waiver of immunity, or (3) the prosecution of an action that fits comfortably within the doctrine of Ex parte Young . . . ." Bell Atlantic MD, Inc., 240 F.3d at 288.

Mr. Biers seeks money damages against the State of North Carolina and has not alleged waiver by the State in this action nor has he alleged congressional abrogation of sovereign immunity. Accordingly, the State of North Carolina is entitled to Eleventh Amendment sovereign immunity as to the claims for money damages brought pursuant to Section 1983 and the state must be dismissed as a party to those claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

The same principle of sovereign immunity applies to bar federal suits for money damages against state officials when sued in their official capacity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Id. (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Lynn v. West, 134 F.3d 582, 587 (4th Cir. 1998) (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945) overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613 (2002)).

In determining whether Ms. Cline is entitled to Eleventh Amendment immunity, it must first be established "whether [North Carolina's] treasury will be affected by the law suit. If the answer is yes, [the defendant] is immune under the Eleventh Amendment." Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006) (quoting Harter v. Vernon, 101 F.3d 334, 340 (4th Cir. 1996)). It is well established that North Carolina District Attorneys are state officials. Gilchrist, 444 F.3d at 249 ("The district attorney prosecutes 'in the name of the State all criminal actions and infractions requiring prosecution' and is undoubtedly a state official.") (citation omitted). Furthermore, as mandated by statute, the state of North Carolina must pay final judgments awarded against a state employee. See id. (citing N.C. Gen. Stat. Ann. § 143-300.6 (Lexis-Nexis 2003) requiring the State of North Carolina to pay "a final judgment awarded in a court of competent jurisdiction against a State employee"). Therefore, Eleventh Amendment sovereign immunity also

6

bars Mr. Biers's claims for money damages under Section 1983 against former Durham District Attorney Cline in her official capacity for First Amendment retaliation and Fourteenth Amendment stigmatization.

Mr. Biers's complaint also alleges several state law causes of action seeking money damages against the State of North Carolina and against Ms. Cline in her official capacity. For the reasons stated above, the Eleventh Amendment deprives this Court of jurisdiction to hear those claims as well. See Bell Atlantic MD, Inc., 240 F.3d at 288. A lack of subject matter jurisdiction may be raised by a court on its own initiative and at any time during the proceedings because "jurisdiction goes to the very power of the court to act." Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008). Thus, this Court must dismiss, sua sponte, all claims in this matter seeking money damages against the State of North Carolina and against Ms. Cline in her official capacity for lack of subject matter jurisdiction.

III.

Ms. Cline has also moved to dismiss Mr. Biers's individual capacity claims for First Amendment retaliation and Fourteenth Amendment stigmatization under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (plaintiff must articulate facts that "show a plausibility of entitlement to relief") (internal citations and quotations omitted). The court accepts as true the factual allegations in the complaint, and draws

all reasonable factual inferences in favor of the plaintiff. Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). A plaintiff must therefore plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Accordingly, while a plaintiff need not plead facts that constitute a prima facie case, his "[f]actual allegations must be enough to raise a right to relief above the speculative level." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 555).

In stating a claim under 42 U.S.C. § 1983, "[a] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011), cert. denied, 132 S. Ct. 112 (2011) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). A defendant acts under color of state law when "exercis[ing] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West, 487 U.S. at 49 (citation omitted). Mr. Biers alleged that Ms. Cline acted in her capacity as Durham County District Attorney when she allegedly obtained access to his confidential state employment file, made defamatory remarks, and entered into a conspiracy with other government officials to remove Mr. Biers from office by false affidavits. Doc. # 1 ¶ 25, 28-29, 42.

A.

"The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). In order to state a claim for First Amendment retaliation, a plaintiff must allege sufficient facts supporting three elements: First, plaintiff must allege that his or her speech was protected under the First Amendment. See Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013) (citing Suarez, 202 F.3d at 685-86). Second, plaintiff must allege facts showing that the defendant's retaliatory action adversely affected the plaintiff's constitutionally protected speech. Id. Third, plaintiff must allege that a causal relationship exists between plaintiff's protected speech and the defendant's retaliatory action. Id.

Taking the allegations as true, and drawing all inferences in favor of the Plaintiff, Mr. Biers's complaint has stated a claim for First Amendment retaliation. With regard to the first element, it is clear that discussing the conduct of public officials in office is constitutionally protected speech. See Tobey, 706 F.3d at 391 (citing Mills v. Alabama, 384 U.S. 214, 218 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.")). Therefore, Mr. Biers has properly alleged that he engaged in speech protected by the First Amendment when he complained of the misconduct of certain government officials. Doc. # 1 (Plaintiff's Complaint) ¶ 45-46.

With regard to the second element, Mr. Biers has alleged that he faced retaliatory actions from Ms. Cline that adversely affected his right to engage in protected speech. Id. ¶ 47-48. "[F]or purposes of a First Amendment retaliation claim under § 1983, a

plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005). The analysis of the adverse action does not depend upon the actual, subjective effect of the retaliatory conduct on a particular plaintiff. Id. Instead, "[t]he determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one–we determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." The Baltimore Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). In conducting this objective analysis, it is not necessary to find that the retaliatory action prevents *all* exercise of Plaintiff's First Amendment rights. Constantine, 411 F.3d at 500. "The cause of action [for First Amendment retaliation] targets conduct that tends to chill such activity, not just conduct that freezes it completely." Id. at 500-01.

There is a range of conduct that can satisfy the adverse action element, although courts have required "that the nature of the retaliatory acts committed by the public official be more than *de minimis* or trivial." Suarez, 202 F.3d at 686-88. In prior decisions, the Fourth Circuit has stated that adverse action may be found where the defendant public official takes action that threatens harm to plaintiff's employment, such as in termination, transfer, promotion, or hiring, see id. at 686; or threatens additional regulatory scrutiny, see Blankenship v. Manchin, 471 F.3d 523, 529-30 (4th Cir. 2006); or harms plaintiff's academic standing at a university, see Constantine, 411 F.3d at 500-01.

10

Here, Mr. Biers has alleged that Ms. Cline conspired with others to initiate removal proceedings against him using false affidavits and information that was improperly obtained from government records. Ms. Cline allegedly used her position to improperly obtain Mr. Biers's confidential state employment records, including his original employment application. She then used those records, in conjunction with other improperly obtained records by Sheriff Martin, to make false allegations against Mr. Biers that could constitute grounds for his removal from office. The false affidavits were submitted to the Clerk of the Durham Country Superior Court, who initiated removal proceedings against Mr. Biers. Threatening an individual's present employment with fabricated allegations would tend to chill a person of ordinary firmness from the exercise of his or her First Amendment rights. Therefore, Mr. Biers has adequately alleged adverse action.

With regard to the third element, Mr. Biers has alleged a plausible causal link between his complaints of official misconduct and the efforts of Ms. Cline and others in filing false affidavits seeking his removal. Doc. # 1 (Plaintiff's Complaint) ¶ 47. "In order to establish this causal connection [for the purposes of a prima facie case], a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity." Constantine, 411 F.3d at 501 (quoting Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir.1998)). If plaintiff can plausibly allege knowledge of the protected activity on the part of defendant, an inference of causation is allowed when there is a close temporal proximity between the protected activity and the alleged retaliation. See Tobey, 706 F.3d at 387 (holding that the close temporal proximity of the government's alleged retaliatory arrest and search

supported the causation element for a First Amendment retaliation claim at the 12(b)(6) stage). See also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) (holding that a three month time gap between the protected activity and the adverse employment action was sufficiently close in time for the purpose of a prima facie case of retaliation).

Mr. Biers has plausibly alleged Ms. Cline's knowledge of the complaints regarding her conduct that he submitted to the Durham County Clerk's Office. Doc. # 1 (Plaintiff's Complaint) ¶ 15. He further alleged that Ms. Cline engaged in a conspiracy against him in retaliation for his complaining of her conduct. Id. ¶ 25. The close temporal proximity between Mr. Biers's complaints and Ms. Cline's alleged retaliatory actions–occurring within the span of four months–supports an inference of causation at the 12(b)(6) stage.

These factual allegations, when taken as true, adequately state a claim that Mr. Biers faced retaliation from Ms. Cline for exercising his First Amendment rights. Defendants' motion to dismiss the First Amendment retaliation claim against Ms. Cline in her individual capacity is denied.

B.

"[I]n order to claim entitlement to the protections of the due process clause–either substantive or procedural–a plaintiff must first show that he has a constitutionally protected liberty or property interest, and that he has been deprived of that protected interest by state action." Stone v. Univ. of Maryland Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (quotations and citations omitted). The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in his or her reputation

12

only if combined with "some more tangible interest [ ] such as employment." Sciolino v. City of Newport News, Va., 480 F.3d 642, 646 (4th Cir. 2007) (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)).  When a plaintiff resigns his employment "of his own free will even though prompted to do so by events set in motion by his employer, he relinquishe[s] his property interest voluntarily and thus cannot establish that the state deprived him of it within the meaning of the due process clause." Stone, 855 F.2d at 173 (quotations omitted).

Mr. Biers has not sufficiently alleged that the actions of defendants were made in conjunction with his termination because he voluntarily resigned from office rather than face a removal proceeding.  Doc. # 1 (Plaintiff's Complaint) ¶ 35.  When Mr. Biers resigned, he voluntarily relinquished his property interest in his public employment, and thus he cannot support a claim that the state "deprived" him of a property interest within the meaning of the Due Process clause of the Fourteenth Amendment.  Although he alleged that Ms. Cline's defamatory remarks to the media harmed his public standing, an injury to reputation alone does not result in a deprivation of any "liberty" or "property" interest cognizable within the meaning of the Fourteenth Amendment without some other accompanying deprivation by the state of a more tangible interest.  Mr. Biers has failed to state a claim for stigmatization within the meaning of the Fourteenth Amendment.

IV.

Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's claims against the State of North Carolina for First Amendment retaliation and Fourteenth Amendment stigmatization.  Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's claims

13

against Ms. Cline in her official capacity under Section 1983 for First Amendment retaliation and as to the claims in both her official and individual capacity for stigmatization under the Due Process clause of the Fourteenth Amendment. All other claims in this matter seeking money damages against the State of North Carolina and against Ms. Cline in her official capacity are **DISMISSED** for lack of subject matter jurisdiction. Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's claim against Ms. Cline in her individual capacity for First Amendment retaliation.

This, the 25th of July, 2013.

                                                  /s/ N. Carlton Tilley, Jr.
                                                  Senior United States District Judge