# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SAMUEL BIERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRACEY CLINE, PAUL MARTIN, | ) | |
| DURHAM COUNTY SHERIFF'S | ) | |
| OFFICE, MICHAEL ANDREWS, | ) | 12CV375 |
| WORTH HILL, THE HARTFORD | ) | |
| FINANCIAL SERVICES GROUP, | ) | |
| INC., COUNTY OF DURHAM, | ) | |
| NORTH CAROLINA, and THE | ) | |
| STATE OF NORTH CAROLINA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Paul Martin's, Durham County Sheriff's Office's, Michael Andrews', Worth Hill's, The Hartford Financial Services Group, Inc.'s and County of Durham, North Carolina's (collectively "Defendants") Motion to Dismiss (Doc. #17) pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The motion has been fully briefed and is ripe for review. For the reasons that follow, Defendants' Motion to Dismiss is granted.

I.

According to the Complaint, on December 23, 2010, Plaintiff Samuel Biers was offered employment as a magistrate sitting in Durham County, North Carolina. (Compl. ¶ 12.) During the course of his employment, he allegedly witnessed several other magistrates take numerous improper and unlawful actions. (Id. ¶ 13.) Mr. Biers submitted a verified complaint on March 9, 2011, reporting these alleged violations, along with related allegations against the then-district attorney, Tracey Cline, a named defendant in the instant action. In addition to filing his verified complaint, Mr. Biers objected to and questioned various other incidents related to the magistrates. (Id. ¶¶ 18-22.) Allegedly in retaliation for his making formal complaints exposing the misconduct of the magistrates and others, then-Sheriff's Deputy Paul Martin, among others, individually and in concert with others, agreed to take, and did take, action against him. (E.g., id. ¶¶ 25, 28.)

On April 13, 2012, Mr. Biers filed the Complaint in the instant action against numerous defendants, alleging thirteen causes of action.[1] At issue

---

[1] On July 16, 2012, Defendants Cline and the State of North Carolina filed a motion to dismiss for lack of jurisdiction (Doc. #10), which the Court granted in part (Doc. #20).

in Defendants' motion are Mr. Biers' claims of (1) retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 against Defendant Martin in his individual and official capacities, (2) stigmatization pursuant to 42 U.S.C. § 1983 against Defendant Martin in his individual and official capacities, and (3) "entity liability" pursuant to 42 U.S.C. § 1983 against Defendant County of Durham, North Carolina and Defendant Durham County Sheriff[2]. Defendants argue that Mr. Biers has failed to state claims pursuant to 42 U.S.C. § 1983 upon which relief can be granted, and the Court agrees.[3]

---

[2] Mr. Biers did not define "Durham County Sheriff" in his Complaint, despite referring to "Durham County Sheriff" in many of his claims. At first glance, it is difficult to determine if he is referring to Defendant Durham County Sheriff's *Office*, Defendant Hill, or Defendant Andrews. Defendants Hill and Andrews served as Sheriff of Durham County allegedly from the spring of 2011 to January 1, 2012, and January 1, 2012, to the present, respectively. (Compl. ¶ 5; Answer ¶ 5.) Although Mr. Biers refers to each individual sheriff as Defendant Hill and Defendant Andrews in paragraph 5 of the Complaint (under the heading "THE PARTIES"), he also describes each as "the former Durham County Sheriff, Worth Hill" and "the current elected Durham County Sheriff Michael Andrews," respectively, in paragraph 3 of the Complaint (also under the heading "THE PARTIES"). After careful review of the Complaint, it is determined that Mr. Biers' repeated reference to "Durham County Sheriff" is a reference to the individual defendants serving as Sheriff of Durham County during their respective terms, not Defendant Durham County Sheriff's Office.

[3] Defendants also argue that the Durham County Sheriff's Office is not a legal entity capable of being sued, and Plaintiff does not dispute this. Not only has this Court previously held that the "Sheriff's Office" is not a legal entity subject to suit, e.g., Capers v. Durham Cnty. Sheriff Dep't, No. 1:07CV825, 2009 WL 798924, *5 (M.D.N.C. Mar. 23, 2009) (noting that plaintiff had already named the proper party, the sheriff, as a defendant) adopted July 17, 2009, but,

II.

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Rules of Civil Procedure "'tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact.'" Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (quoting Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014)).   Such a motion is analyzed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Rules of Civil Procedure. Id. at 347.

Therefore, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[]

---

because Mr. Biers fails to state a claim against Defendant Martin, any claims against Durham County Sheriff's Office are dismissed.

sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face in the sense that the complaint's factual allegations

must allow a court to draw the reasonable inference that the defendant is

liable for the misconduct alleged").  However, when a complaint states facts

that are "'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.''" Iqbal,

556 U.S. at 678, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557,

127 S. Ct. at 1966).  When evaluating whether the complaint states a claim

that is plausible on its face, the facts are construed in the light most

favorable to the plaintiff and all reasonable inferences are drawn in his favor.

U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131,

136 (4th Cir. 2014).  Nevertheless, "labels and conclusions[,]" "a formulaic

recitation of the elements of a cause of action[,]" and "naked assertions . . .

without some further factual enhancement" are insufficient. Twombly, 550

U.S. at 557, 127 S. Ct. at 1966; see also Massey, 759 F.3d at 353 (noting

that the Court is not obligated to accept allegations that are "'unwarranted

inferences, unreasonable conclusions, or arguments'" or "'that contradict

matters properly subject to judicial notice or by exhibit'") (quoting

Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006)).

5

When analyzing a Rule 12(c) motion, a court may consider the answer, as well. See id. at 347 (noting that the court could consider the complaint, the answer, matters of public record, exhibits to the answers, and exhibits to the Rule 12(c) motions that were integral to the complaint and authentic); Alexander v. City of Greensboro, No. 1:09-CV-293, 2011 WL 3360644, *2 (M.D.N.C. Aug. 3, 2011).  Factual allegations of the answer "'are taken as true only where and to the extent they have not been denied or do not conflict with the complaint.'" Alexander, 2011 WL 3360644 at *2 (quoting Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991) and noting that a defendant cannot rely on facts alleged only in the answer, including affirmative defenses, which contradict the complaint because a plaintiff is not required to reply to the answer and all allegations in the answer are deemed denied).

III.

First, Defendants argue that Mr. Biers' claim against Defendant Martin in his individual and official capacities for retaliation in violation of the First Amendment fails as a matter of law.  Mr. Biers claims that "[t]his Court's determination [in its July 25, 2013 Order] that the Complaint states an actionable First Amendment Retaliation claim against Defendant Cline controls Defendant Martin's Motion to Dismiss that claim against him."

6

Case 1:12-cv-00375-CCE-LPA   Document 28   Filed 07/24/15   Page 6 of 29

(Doc. #25 at 4.)  It does not.  It is determined that Mr. Biers has failed to state a plausible claim for relief against Defendant Martin for retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983.

A.

A plaintiff alleging a § 1983 claim must allege that (1) the defendant "deprived plaintiff of a right secured by the Constitution and laws of the United States," and (2) the deprivation was performed under color of state law. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). "The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000).  In order to state a claim for First Amendment retaliation, Mr. Biers must allege sufficient facts supporting three elements: (1) that his speech was protected under the First Amendment, (2) that Defendant Martin's retaliatory action adversely affected Mr. Biers' constitutionally protected speech, and (3) that a causal relationship exists between Mr. Biers' protected speech and Defendant Martin's retaliatory action. See Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013) (citing Suarez, 202 F.3d at 685-86).  If Defendant Martin's alleged retaliatory act is in the form of speech, absent threat, coercion, or

7

intimidation suggesting punishment, sanction, or adverse regulatory action will imminently follow, his speech does not adversely affect Mr. Biers' First Amendment right. Suarez, 202 F.3d at 687.

First, as to whether a plaintiff's speech is protected under the First Amendment, "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960 (2006). However, even if the speech concerns the subject matter of employment or the public employee expresses his views inside his office, those factors are not dispositive. Id. at 420-21, 126 S. Ct. at 1959. The "controlling factor" is whether the speech was made pursuant to the employee's duties. Id. at 421, 126 S. Ct. at 1959-60. Outside of determining the protection of a public employee's speech made during the course of employment, it is clear that discussing the conduct of public officials in office is constitutionally protected speech. See Tobey, 706 F.3d at 391 (citing Mills v. Alabama, 384 U.S. 214, 218 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of

8

that Amendment was to protect the free discussion of governmental affairs.")).

Next, "for purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005). "The determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one – we determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." The Baltimore Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). In conducting this objective analysis, it is not necessary to find that the retaliatory action prevents all exercise of the plaintiff's First Amendment rights. Constantine, 411 F.3d at 500. "The cause of action [for First Amendment retaliation] targets conduct that tends to chill such activity, not just conduct that freezes it completely." Id. at 500-01.

The Fourth Circuit has stated that adverse action may be found where the defendant public employer takes action that threatens harm to a public employee's employment, Suarez, 202 F.3d at 686; the defendant

9

government official threatens additional regulatory scrutiny of a private citizen's business, see Blankenship, 471 F.3d at 529-30; or the defendant public university harms a plaintiff's academic standing, see Constantine, 411 F.3d at 500-01. In other words, Mr. Biers must show that Defendant Martin's actions "resulted in something more than a 'de minimis inconvenience'" to Mr. Biers' exercise of his First Amendment rights. Id. at 500.

Finally, "[i]n order to establish [a] causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [the plaintiff's] engaging in protected activity." Constantine, 411 F.3d at 501. "There must also be some degree of temporal proximity to suggest a causal connection." Id. (finding the complaint adequately alleged causal connection where approximately four months elapsed between the exercise of First Amendment rights and the alleged retaliatory conduct). See also, e.g., Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) (finding that the defendant's knowledge of the plaintiff's protected activity and the passage of nine months from the time of the protected activity and the alleged retaliatory conduct was sufficient, although a close question, to allege causation).

B.

1.

Mr. Biers sufficiently alleges that his speech is protected under the First Amendment.  Defendants argue that Mr. Biers did not engage in constitutionally protected speech because his complaint was submitted in furtherance of his employment as a magistrate.  Although Mr. Biers does not include in the Complaint facts about his official duties as a magistrate, his alleged speech is not likely among those duties.  He alleges that he

> petitioned judicial officials of Durham County for the redress of his grievances by submitting a [verified] complaint alleging misconduct in office of certain Durham County magistrates and written objections to certain policies Plaintiff believed invaded and altered the allocation of judicial responsibility and discretion established by the laws and constitution of the State of North Carolina.

(Compl. ¶ 45; see also id. ¶¶ 14-22.)  Specifically, in his verified complaint, he alleged that one magistrate unlawfully carried a handgun without a permit while on duty, repeatedly left the handgun on top of a desk in a penal institution where inmates had immediate access to it, conspired with the then-district attorney and others to exercise influence over witnesses and the disposition of criminal cases, conspired with the then-district attorney to unlawfully recall and alter properly issued criminal process, and engaged in *ex parte* communications with witnesses after criminal proceedings had been

11

initiated, among other actions. (Id. ¶¶ 14-15.) He also alleged in that same

verified complaint that another magistrate improperly took extended leaves

of absence for which she was paid. (Id. ¶ 16.) In addition to filing his

verified complaint, Mr. Biers allegedly objected to the suspension with pay of

another magistrate who was purportedly found to have committed crimes in

office, a compensation Mr. Biers believed was not permitted by state law.

(Id. ¶¶ 18-20.) He also allegedly inquired about the procedure for initiating

criminal proceedings to charge a magistrate with crimes committed while in

office and in Plaintiffs presence.[4] (Id. ¶ 22.) As noted above, speaking

about the conduct of public officials in office, as Mr. Biers alleges that he

did, is constitutionally protected speech.

## 2.

However, Mr. Biers has not alleged sufficient facts about Defendant

Martin's purported retaliatory action[5] or in support of a causal connection

---

[4] It is not apparent from the Complaint to whom or how Mr. Biers objected to the failure to apply state laws to a magistrate suspended with pay, to whom or how he questioned the designation of a magistrate judge as "chief magistrate," or to whom or how he inquired about the procedure for initiating criminal proceedings against a magistrate.

[5] Defendant Martin argues that "Plaintiff's claim for retaliation as stated in the complaint does not identify any retaliatory adverse employment action taken by Defendant Martin[.]" Although Defendant Martin is correct in his assertion, Mr. Biers is not making a claim against Defendant Martin for employer retaliation. Mr. Biers does not allege that any of the defendants is his employer, and in Defendants' brief in support of their motion to dismiss, they assert that none

between Mr. Biers' speech and Defendant Martin's alleged retaliatory acts. Not only are many of Mr. Biers' allegations conclusory, but the non-conclusory factual allegations lack facial plausibility. See Iqbal, 556 U.S. at 680, 129 S. Ct. at 1950 (providing a two-step process for evaluating a complaint – first, identify legal conclusions that are not entitled to the assumption of truth and second, identify non-conclusory factual allegations to determine if they give rise to a plausible suggestion of unlawful conduct).

Mr. Biers makes several conclusory allegations concerning Defendant Martin's purported unlawful conduct. He alleges that, after he made the formal complaints against Magistrate Evans and others, Defendant Martin, along with Magistrate Evans and Defendant Cline, "agreed to undertake a course of conduct" against Mr. Biers. (Id. ¶ 25; see also id. ¶¶ 26, 27 ("Magistrate Evans, Defendant Cline, Defendant Martin, and others thereby conspired . . . .") He also alleges that Defendant Martin knew when he submitted his affidavit[6] in support of Mr. Biers' removal, in which he

---

of them employed Mr. Biers. (Doc. #18 at 13.) Therefore, adverse employment action is not a requisite allegation. Cf. Durham v. Jones, 737 F.3d 291, 299 (4th Cir. 2013) (among the factors analyzed in a public employee's claim of retaliatory discharge is whether the employee's speech was a substantial factor in the employee's discharge).

[6] Defendant Martin's affidavit in support of Mr. Biers' removal is an exhibit to Defendants' brief in support of their motion to dismiss. (Doc. #18 Ex. 1 at 24.) This affidavit is a public document and is integral to the complaint and was filed with a Certificate of True Copy from the Office of the Clerk of Superior Court in

13

allegedly stated that Mr. Biers misrepresented his date of birth in his employment application, that Mr. Biers had submitted a copy of his driver's license with his employment application that clearly showed his correct birth date, and that Defendant Martin omitted this fact from his affidavit. (Id. ¶ 28.j.; cf. Martin Aff. ¶¶ 3-6 Doc. #18 Ex. 1 at 24.)  Mr. Biers further alleges, "Upon information and belief, Magistrate Evans, Defendant Cline, and Defendant Martin agreed to disseminate the false statements relating to Plaintiff's employment application and prior criminal record" to the media. (Id. ¶ 31.)

Although this alleged conspiracy and related conduct sound as though they would likely deter a person of ordinary firmness from exercising his First Amendment rights, these allegations are conclusory, "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (citation omitted).  There are no facts alleged as to a meeting of the minds to support the conspiracy allegations.  Likewise, there are no facts alleged to support the conclusion that Defendant Martin knew information that he deliberately omitted.  Therefore, these are not entitled to be assumed true. Id. at 681, 129 S. Ct. at 1951.

---

Durham County.  Therefore, the Court may consider is. See Philips, 572 F.3d at 180.

Mr. Biers' non-conclusory factual allegations against Defendant Martin do not plausibly suggest that he acted unlawfully.  Defendant Martin is alleged to have requested and received reports from Michigan and Nevada that Mr. Biers had been involved in criminal proceedings,[7] to have prepared an affidavit in support of Mr. Biers' removal from office, and to have provided Kenya Newell with information about Mr. Biers[8] that she used in her affidavit in support of Mr. Biers' removal.[9] (Compl. ¶¶ 28.h., 28.j., 29; cf. Martin Aff. Doc. #18 Ex. 1 at 24, Newel  Aff. Doc. #18 Ex. 2 at 14-18.) "Defendants" are alleged to have made false statements relating to Mr. Biers' employment file and criminal record to a news reporter.[10] (Id. ¶ 32.)

---

[7] Although it is ultimately determined that Mr. Biers has failed to state a claim for relief against Defendant Martin, it is worth noting that the allegations in paragraph 28.h. sound in fraud and trigger the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  As alleged, the facts in paragraph 28.h. are not stated with sufficient particularity.

[8] The allegations in paragraph 29 do not clearly attribute the provision of false claims that Mr. Biers had a criminal record and protected information from his personnel files to a particular party.  As written, Mr. Biers alleges that Defendant Martin both made false claims about Mr. Biers and gave protected personnel information to Newell.  However, the preceding allegations only attribute actions surrounding Mr. Biers' criminal history to Defendant Martin.  Cline, on the other hand, is the only party alleged to have obtained Mr. Biers' personnel files.

[9] Newell's affidavit in support of Mr. Biers' removal is an exhibit to Defendants' brief in support of their motion to dismiss. (Doc. #18 Ex. 2 at 14-18.)  See supra n. 6.

[10] Although Mr. Biers does provide specific, albeit deficient, allegations against Defendant Martin elsewhere in the Complaint, plaintiffs who refer generally to "Defendants" are found to have employed a "conclusory and shotgun approach . . . [that] fails to provide each Defendant the factual basis for the claim(s) against him . . . ." Luna-Reyes v. RFI Const., LLC, 57 F. Supp. 3d 495, 503 (M.D.N.C. 2014).

15

Mr. Biers' factual allegations are similar to those in Twombly where the plaintiff alleged that the defendants engaged in parallel conduct and, therefore, they had to have entered into a conspiracy in violation of § 1 of the Sherman Act.[11] 550 U.S. at 551, 556-57, 127 S. Ct. at 1962-63, 1966. Because the plaintiff was required to state enough factual matter, taken as true, to suggest that an agreement was made, the allegation of parallel conduct and "a bare assertion of conspiracy" was not sufficient. Id. at 556-57, 127 S. Ct. at 1966 ("A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement . . . " and "further circumstances pointing toward a meeting of the minds . . . ."). This is because the pleading stage requires "allegations plausibly suggesting (not merely consistent with)" the alleged unlawful conduct. Id. at 557, 127 S. Ct. at 1966.

Similarly, in McCleary-Evans, the plaintiff had alleged a violation of Title VII for failure to hire because of race or sex. 780 F.3d at 585. She alleged that the defendant did not hire her because of the decision-makers'

---

[11] The Twombly Court characterized the "border" in the case as the line "between the factually neutral and the factually suggestive." 550 U.S. at 557 n. 5, 127 S. Ct. at 1966 n. 5. Not only is the border in Mr. Biers' Complaint the line between the factually neutral and the factually suggestive, but, as described above, also "the line between the conclusory and the factual." See id. (citing DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 56 (1999)). "Each [such line] must be crossed to enter the realm of plausibility." Id.

bias against African-American women, as purportedly supported by the allegation that "'[d]uring the course of her interview, and based upon the history of hires within [the Office of Environmental Design], . . . both [of the decision-makers] predetermined to select for both positions a White male or female candidate.'" Id. at 585-86 (third bracket added). However, there was no factual basis for what happened during the course of her interview. Id. at 586. The plaintiff's conclusory allegations could only be filled by "speculation as to why two 'non-Black candidates' were selected to fill the positions instead of her." Id. Although the allegation that non-Black decision-makers hired non-Black applicants instead of the plaintiff was "consistent with discrimination," it did not "alone support a reasonable inference that the decision[-]makers were motivated by bias." Id.

Here, as in McCleary-Evans, only speculation can fill the gaps in Mr. Biers' Complaint. Mr. Biers does not allege how Defendant Martin knew Evans or Cline, or that they did know each other. He makes no allegation connecting Defendant Martin to Evans or Cline, other than conclusory allegations that they agreed to take some action against Mr. Biers. Unlike Cline, Defendant Martin is not alleged to have been named in any of Mr. Biers' complaints nor to have participated in any of the alleged actions taken by Evans or Cline. There is no allegation that Defendant Martin even knew

17

about Mr. Biers' complaints.  There is no allegation whatsoever as to why

Defendant Martin would take any of these alleged actions, other than the

conclusory allegation that he did so in retaliation for Mr. Biers' complaints

about which Defendant Martin is not alleged to know and about people other

than Defendant Martin with whom he is not even alleged to have a

connection.  Although the temporal proximity of Defendant Martin's alleged

conduct is within approximately two months of Mr. Biers' filing of the

complaint and other related actions, there are not enough other non-

conclusory factual allegations to support a First Amendment claim against

Defendant Martin.[12]

## IV.

Defendants also argue that the claim of stigmatization in violation of

42 U.S.C. § 1983 against Defendant Martin in his individual and official

capacities fails as a matter of law because Mr. Biers has not alleged a

deprivation of due process and has admitted voluntary resignation.  The

Court agrees.  "[I]n order to claim entitlement to the protections of the due

process clause – either substantive or procedural – a plaintiff must first

show that he has a constitutionally protected liberty or property interest, and

---

[12] Because Mr. Biers has not stated a First Amendment claim against Defendant
Martin, Defendant Martin's qualified immunity argument need not be addressed.

that he has been deprived of that protected interest by state action." <u>Stone</u> <u>v. Univ. of Md. Med. Sys. Corp.</u>, 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted).  If a plaintiff is claiming injury to his reputation, he "must demonstrate that his reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status if he wants to succeed." <u>Shirvinski v. U.S. Coast Guard</u>, 673 F.3d 308, 315 (4th Cir. 2012) (quoting <u>Paul v. Davis,</u> 424 U.S. 693, 711, 96 S. Ct. 1155 (1976)). <u>See also</u> <u>id.</u> at 314-15 ("[P]laintiffs in cases involving allegedly defamatory statements by the government [are required] to show more than reputational injury in order to prevail on a constitutional claim.").

The Fourth Circuit has recognized that, in the context of public employment, "a loss of government employment accompanied by a public employer's stigmatizing remarks constitutes a deprivation of a liberty interest." <u>Id.</u> at 315 (citing <u>Ridpath</u>, 447 F.3d at 309).  In other words, a public employee claiming a violation of his liberty interest in his reputation "must allege that the charges against him: (1) place a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." <u>Sciolino</u> <u>v. City of Newport News</u>, 480 F.3d 642, 646 (4th Cir. 2007).  However, when government action may affect a private citizen's private employment

19

opportunities, "that injury does not work a change in legal status." Shirvinski, 673 F.3d at 315 (noting that the Supreme Court rejected the plaintiff's allegation in Paul that the government's action "would seriously impair his future employment opportunities" because "the mere defamation of an individual . . . was [not] sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment"). Particularly relevant, when a plaintiff resigns his employment "of his own free will even though prompted to do so by events set in motion by his employer, he relinquishe[s] his property interest voluntarily and thus cannot establish that the state deprived him of it within the meaning of the due process clause." Stone, 855 F.2d at 173.

As an initial matter, Mr. Biers' factual allegations against Defendant Martin are insufficient, as explained above. Even if they were not conclusory and glued together with speculation, Mr. Biers' stigmatization claim still fails. While employed as a magistrate sitting in Durham County, Mr. Biers was likely a public employee. However, he never alleges that any of Defendants was his employer[13] or otherwise identifies who or what entity

---

[13] In Defendants' brief in support of their motion, they state that Mr. Biers "was not employed by Defendant Martin or the other defendants." (Doc. #18 at 13.) Likewise, in Cline's brief in support of her motion, she states that neither she, "as the district attorney, nor the remaining defendants, as county officials, were Plaintiff's employer." (Doc. #11 at 9.) The inference is that the State of North Carolina was Mr. Biers' employer. However, he never alleges that fact.

was his employer.  Without any allegation that any of Defendants employed

him, the analysis of Mr. Biers' due process claims as those of a public

employee is not applicable. Cf. Shirvinski, 673 F.3d at 315 (noting that

Shirvinski was not an employee of nor in direct contractual relationship with

the government and, therefore, because he did not suffer a loss of public

employment, case law analyzing due process in the context of public

employment was not germane).  Nevertheless, it could be argued that Mr.

Biers is alleging that Defendants, although not his employer, stained his

reputation and forced him to resign from office.  The problem is that, other

than alleging that Defendants' actions stigmatized him, Mr. Biers has not

alleged that Defendants also took actions that "distinctly altered or

extinguished his legal status."

Instead, he alleges that, "As a result of the public obloquy and outrage

fomented by Defendants' and other individuals' false statements, echoed by

media organizations, Plaintiff was deprived of the public trust that is

necessary to carry out the duties of a magistrate judge, and therefore

resigned." (Compl. ¶ 35.)  Assuming arguendo that Mr. Biers had a property

interest in his continued employment,[14] he has not alleged that any of

---

[14] Although Mr. Biers alleges that he suffered a loss of "property interests" (Compl.
¶ 60), he alleges no facts to support such a conclusion.

21

Defendants was his employer. Even if he had, his own allegations indicate that he resigned of his own will. Furthermore, investigation into the allegations against Mr. Biers cleared his name. See infra.

He also alleges that, "Defendants'[15] stigmatization of Plaintiff disqualified him from pursuing his professional calling as a judicial officer because Plaintiff could no longer be free of the appearance of impropriety in conducting the affairs of any such office as required by the North Carolina Code of Judicial Conduct." (Compl. ¶ 58.) This alleged impairment of future employment as a judicial officer is likewise insufficient to state a due process claim. See Paul, 424 U.S. at 697, 712, 96 S. Ct. at 1159, 1166 (finding plaintiff's allegations of violation of due process insufficient where plaintiff alleged that the police's designating him an "active shoplifter" "would seriously impair his future employment opportunities"). If Plaintiff had alleged that any of Defendants was his employer, this analysis might have been different, but he did not. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 574, 92 S. Ct. 2701, 2707 (1972) ("[A] State, in regulating eligibility for a type of professional employment, cannot foreclose a range of opportunities in a manner . . . that contravene(s) . . . Due

---

[15] "Defendants" appears to refer to Defendant Cline and Defendant Martin.

Process, and, specifically, in a manner that denies the right to a full prior hearing."[16]) (internal citations omitted).

Mr. Biers also alleges that,

On May 25, 2011, [apparently after Mr. Biers' resignation[17]] the attorney appointed by the Court to prosecute the removal action against Plaintiff . . . advised the Superior Court Judge presiding over the action . . . that he had reviewed every case over which Plaintiff presided, and could find no instance in which Plaintiff abused his power, abused any process, abused his authority, violated any law, or otherwise engaged in any form of misconduct at all.

(Compl. ¶ 36.) The presiding judge "dismissed the proceedings seeking Plaintiff's removal from office." (Id. ¶ 38.) Had Mr. Biers not resigned, he would have been afforded the opportunity to answer in court to the removal proceedings against him, and he has not alleged that Defendants denied him the opportunity to defend himself in those proceedings. Cf. Codd v. Velger, 429 U.S. 624, 627, 97 S. Ct. 882, 883-84 (1977) (explaining that in a case of alleged stigmatization "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is an opportunity to refute the charge" and

_____

[16] Even if Mr. Biers had alleged that one of Defendants employed him, it is likely the Court's conclusions would be the same, because of Mr. Biers' insufficient allegations against Defendant Martin and his allegations that proceedings were commenced against him in a court of law and that those proceedings cleared his name. See infra.

[17] Mr. Biers does not provide the date that he allegedly resigned, but in the sequence of allegations surrounding the culmination of Defendants' alleged retaliatory acts, it appears from the Complaint that Mr. Biers' resignation occurred prior to the dismissal of the proceedings against him.

"clear his name").  Moreover, he has alleged that, even after he resigned, the attorney assigned to prosecute the matter advised the court that after careful review of Mr. Biers' actions, he found no misconduct at all and the court dismissed the action.  In sum, Mr. Biers has failed to sufficiently allege a claim of stigmatization against Defendant Martin in his individual or official capacity.

V.

Next, Defendants argue that Mr. Biers' claims under Monell, referring to Mr. Biers' claim of "entity liability" against Defendant County of Durham and Defendant County Sheriff, should be dismissed.  The Court agrees.  Mr. Biers has neither sufficiently stated a claim against Defendant Martin, as explained above, nor pled sufficient facts against Defendant County of Durham and Defendant County Sheriff.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690, 98 S. Ct. at 2035-36.  To state a claim for local government liability, "[a] plaintiff must show (1) an official policy or custom (2) that is fairly attributable to the municipality (3) that

24

proximately caused the deprivation of a constitutional right." Cherry v. City of Greensboro, No. 12-cv-217, 2013 WL 422857,*6 (M.D.N.C. Feb. 4, 2013) (citing Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008)).  The policy at issue "may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (internal citations omitted).  In addition, a local governing body's custom may be a source of liability if it is "a practice [that] is so 'persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" Id. (quoting Monell, 426 U.S. at 691, 98 S. Ct. 2018).  The local governing body can also be liable if the alleged constitutional violation was caused by an individual official's actions that are found to represent the governing body's official policy. Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 522-23 (4th Cir. 2000).  However, "liability only attaches where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Id. at 523 (citation omitted).  A "final policymaking official" is "a [local government] official [with] the

25

responsibility and authority to implement <u>final</u> municipal policy with respect to a particular course of action." <u>Id.</u>

State law dictates who has final policymaking authority. <u>See</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483, 106 S. Ct. 1292 (1986).  In North Carolina, deputy sheriffs are treated as employees of the Sheriff, not the county. <u>See</u> <u>Clark v. Burke Cnty.</u>, 117 N.C. App. 85, 89, 450 S.E.2d 747, 749 (N.C. Ct. App. 1994) (citing N.C. Gen. Stat. § 153A-103(1)). "Thus, under North Carolina law, the sheriff, not the county encompassing his jurisdiction, has final policymaking authority for hiring, supervising, and discharging personnel in the sheriff's office." <u>Parker v. Bladen Cnty.</u>, 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008).

Mr. Biers alleges that Defendant Martin, Defendant County of Durham, and Defendant County Sheriff are liable for the violations of his constitutional rights because

> a.  Officials with final policy-making authority for the Durham County Sheriff and the County of Durham participated in the conduct that caused the foregoing deprivations of Plaintiff's constitutional rights;
> b.  Officials with final policy-making authority for the Durham County Sheriff and the County of Durham ratified the conduct and decisions that caused the foregoing deprivations of Plaintiff's constitutional rights; and
> c.  The deprivations of Plaintiff [sic] constitutional rights were caused by the Durham County Sheriff's and the County of Durham's constitutionally inadequate training.

26

(Compl. ¶65a.-c.) However, Mr. Biers has failed to allege any facts to support these "[t]hreadbare recitals of the elements of a cause of action, [which are] supported by mere conclusory statements." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 555, 127 S. Ct. 1955 and noting that "[a]lthough for purposes of a motion to dismiss, [the court] must take all of the factual allegations in the complaint as true, [the court is] 'not bound to accept as true a legal conclusion couched as a factual allegation'").

Mr. Biers has not alleged the identities of any of the officials with final policy-making authority[18] nor has he alleged facts identifying what policies are at issue, how the officials with final policy-making authority participated in the alleged unconstitutional conduct, how those officials ratified the alleged unconstitutional conduct, or what training is at issue and how it was inadequate. Instead, Mr. Biers' allegations focus on the conduct of Defendant Martin, then a Sheriff's Deputy, with respect to his treatment of Mr. Biers between March and April 2011, with no mention of either Defendant Andrews, Defendant Hill, or Durham County after their inclusion in "THE PARTIES" section and with no suggestion that Defendant Martin's

---

[18] The only official that Mr. Biers has alleged, albeit insufficiently, participated in the retaliatory conduct is Defendant Martin, then a Sheriff's Deputy. He has not alleged that Defendant Martin had final policy-making authority over anything.

27

actions were part of larger pattern of similar conduct.  Mr. Biers has failed to

sufficiently allege liability against either Defendant County of Durham or

Defendant County Sheriff.

## VI.

Defendants also "join co-defendants [Cline and State of North

Carolina] in requesting the Court decline jurisdiction over the state law

claims"[19] because "Defendants herein have demonstrated why the Court

should dismiss all claims over which it has original jurisdiction."  Because

Mr. Biers has failed to state a claim against Defendants for a violation of the

First Amendment under § 1983, for stigmatization under § 1983, or for

"entity liability" under § 1983, the Court will decline to exercise jurisdiction

over the claims alleging violations of state law.  Therefore, those claims

against Defendants are dismissed.

## VII.

In the last paragraph of their motion to dismiss, Defendants seek an

award of attorney's fees pursuant to 42 U.S.C. § 1988.  It should be

observed that the bar for a prevailing defendant in a 42 U.S.C. § 1983 case

to establish entitlement to attorney's fees is extremely high. See, e.g., Fox

---

[19] In its July 25, 2013 Order, the Court dismissed all claims, including the claimed violations of state law, seeking money damages against the State of North Carolina and Cline for lack of subject matter jurisdiction.

28

v. Vice, ___ U.S. ___, 131 S. Ct. 2205 (2011); Unus v. Kane, 565 F.3d 103 (4th Cir. 2009).  If Defendants intend to pursue an award of attorney's fees, they must file a motion for attorney's fees and are instructed to follow Local Rule 54.1 before doing so.

VIII.

For the reasons stated herein, Defendants Paul Martin's, Durham County Sheriff's Office's, Michael Andrews', Worth Hill's, The Hartford Financial Services Group, Inc.'s and County of Durham, North Carolina's Motion to Dismiss (Doc. #17) is **GRANTED.**

This the 24th day of July, 2015.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge